IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS SABO and CHRISTINE SABO, His Wife, | CIVIL ACTION NO. **3:CV-08-1889** |
| Plaintiffs | Magistrate Judge Blewitt |
| v. | |
| ARIEL SUAREZ et al., | |
| Defendants | |

**MEMORANDUM AND ORDER**

## I. Background

Plaintiffs, Thomas and Christine Sabo, husband and wife, filed a Complaint on October 14, 2006, in the Middle District of Pennsylvania. Plaintiffs basically allege that Defendant Ariel Suarez, while a truck driver for Defendant Bicks Transport, Inc. ("BTI"), acting within the scope of his employment for BTI, recklessly and negligently collided his tractor-trailer into Plaintiff Thomas Sabo's vehicle on October 20, 2006, and caused Mr. Sabo serious injuries. Plaintiffs' Complaint asserted seven (7) causes of actions against Defendants. On December 15, 2008, Defendants Suarez and BTI filed their Answer to the Complaint. (Doc. 8).

Jurisdiction of this Court is based on diversity, 28 U.S.C. § 1332. (Doc. 1, p. 2).

As stated, Plaintiffs' Complaint raises seven counts: Counts I and II, Thomas Sabo's claim of Reckless Conduct against each Defendant; Count III, Thomas Sabo's claim of Vicarious Liability against BTI; Counts IV and V, Thomas Sabo's claim of Punitive Damages against both Defendants; Count VI, Thomas Sabo's claim of Vicarious Liability for Punitive Damages against

-1-

BTI; and Count VII, Christine Sabo's claim of Loss of Consortium against both Defendants. (Doc. 33, Ex. A).

Discovery was originally scheduled to be completed by June 1, 2009. (Doc. 15). This was amended on May 26, 2009, and the discovery period was extended to end on August 1, 2009. (Doc. 32). On June 15, 2009, Plaintiffs filed the present Motion for Leave of Court to Permit Punitive Damages **(Doc. 33)**, along with a Brief in Support. (Doc. 34). Defendants filed their opposition Brief on June 30, 2009 (Doc. 36), which was followed by a Supplemental Memorandum filed by the Plaintiffs on July 7, 2009. (Doc. 37).

Since both Plaintiffs and Defendants filed their Briefs in support of their respective positions, Plaintiffs' Motion (Doc. 33) is ripe for disposition.[1]

## II. Discussion.

Plaintiff Thomas Sabo seeks punitive damages against Defendant BTI, claiming the company was negligent with respect to its hiring/training/supervision procedures, and that it recklessly entrusted the tractor-trailer to Defendant Suarez, knowing Defendant Suarez to be an incompetent operator. In the alternative, the Plaintiffs allege that Defendant BTI is liable for punitive damages under vicarious liability. Plaintiff Thomas Sabo also asserts a claim for punitive damages against Defendant Suarez based on his driving the tractor-trailer through a red light.

---

[1] The parties have consented to the jurisdiction of the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 14 and January 26, 2009 docket entry).

A. *Defendant Suarez*

Plaintiffs are seeking to compel discovery for punitive damages against both Defendants Suarez and BTI. Plaintiffs allege that Defendant Suarez operated his tractor-trailer in a "manner which was reckless, willful, wanton, outrageous and malicious, so that he demonstrated a reckless indifference to and conscious disregard of the rights and safety of others." (Doc. 34, pp. 5-6). They also allege that Defendant Suarez was driving recklessly and at a high rate of speed.

In Pennsylvania[2], it has been held that awarding punitive damages is warranted when conduct is outrageous "because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison v. Luddy*, 582 Pa. 114, 870 A.2d 766, 770 (2005). A plaintiff seeking to demonstrate that a defendant's conduct was outrageous must first establish that the defendant possessed the requisite state of mind. *Id.*, 870 A.2d at 770-71. The actions or inactions of a defendant must be intentional, reckless or malicious. *Id.* at 771; *see also Burke v. TransAm Trucking, Inc.*, 605 F.Supp.2d 647, 651 (M.D.Pa, 2009). As the *Hutchison* Court stated, "in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison*, 870 A.2d at 772.

Here, Plaintiffs aver that Defendant Suarez traveled through a red light prior to impact

---

[2]We apply Pennsylvania substantive law since this is a diversity case. *See Moore v. Kulicke & Soffa Industries, Inc.*, 318 F.3d 561, 563 (3d Cir. 2003).

with Thomas Sabo's vehicle. (Doc. 34, p. 3). According to the Plaintiffs, "the weather was wet and foggy and visibility was poor." (Doc. 34, p. 15). Plaintiffs state that the resulting impact pushed Mr. Sabo's vehicle "sideways off the road surface, over a raised traffic island, through two signs and into a wooded and/or wetland area." (Doc. 34, p. 3). Defendant Suarez was subsequently cited for failure to obey a traffic signal. (*Id.*). Plaintiffs claim that preceding the intersection were various warning signs, including a sign warning of the upcoming intersection and a yellow caution diamond, each allegedly coated with highly reflective materials to assist in their visibility in poor weather conditions. (Doc. 34, pp. 16-17).

Defendants' counter argument is based on their contention that Mr. Suarez was traveling cautiously at the time of impact. (Doc. 36, p. 2).[3] According to the Defendants, the tractor-trailer was proceeding somewhere between 10 and 25 mph[4] when it came across the intersection and impacted the side of Plaintiff's vehicle, well under the posted 45 mph limit. (*Id.*). Defendants state that Trooper Brian Travis of the Pennsylvania State Police, the investigating officer, while he cited Defendant Suarez for failure to obey a traffic signal (*i.e.* the red light), he did not charge Defendant Suarez with any moving violations (*i.e.* speeding, driving too fast for conditions), nor was there any sign of impairment of Suarez from alcohol or narcotics. (Doc. 36, p. 3). Defendants also contend that Suarez was unfamiliar with the

---

[3] Defendants' Brief lacks page numbers, in violation of Local Rule 5.1(c), M.D. Pa.

[4] The investigating officer at the scene, estimated the speed of the tractor-trailer to be 10 mph prior to impact. Mr. Suarez estimated his own speed prior to the accident to be approximately 25 mph. Regardless, Defendant Suarez went through a red light and hit Plaintiff Thomas Sabo's vehicle.

configuration of the road and the approaching intersection, since this was his first delivery to the particular destination. (Doc. 36, p. 2).

Based on the facts discussed above, we find that discovery should be allowed as it pertains to punitive damages against Defendant Suarez. Defendants themselves admit that Defendant Suarez is a "well-experienced tractor trailer operator who had obtained his Commercial Driver's License (CDL) in 1994 and had worked steadily for approximately 10-12 years as a tractor trailer operator prior to the occurrence of this accident." (Doc. 36, p. 4). They also provide an eyewitness statement that "[i]t was so foggy, you couldn't see in front of you." (Doc. 36, p.3 ). Defendant Suarez's conduct thus could be found to be outrageous since he drove through a red light and he should have been more cautious under the conditions. Defendants' own evidence justifies the allowance of discovery regarding Plaintiff's punitive damages claims to continue.

In *Burke*, 605 F.Supp.2d 647, 655, the Court allowed punitive damages to proceed against a well-experienced driver with significant training since it found that he should have consciously appreciated a risk of harm. While in the *Burke* case, the risk of harm was speeding, it could reasonably be found in our case that a driver with the type of experience Suarez undisputedly had should have recognized the risk of driving his tractor trailer in densely foggy, wet conditions through an unfamiliar territory.

Further, Defendants' argument that Suarez was traveling with caution at a low rate of speed through the red light does not convince the Court that discovery for punitive damages should be precluded. Defendants argue that Suarez was not acting recklessly when he drove

through the red light because he was traveling cautiously below the posted 45 mph speed limit. (Doc. 36, p. 8). They also contend that "[i]t is common knowledge that the most important thing to do when confronting dense fog is to slow down and to proceed with caution." (Doc. 36, pp. 8-9). However, despite the claim that Defendant Suarez was proceeding with caution, the fact remains that he went through a red light and crossed an intersection into the lane in which Plaintiff Thomas Sabo was legally driving, and collided with Sabo. Thus, Defendant Suarez certainly could have been more cautions, in which case no accident would have occurred.

Therefore, we find there is enough information at this point to allow discovery on the issue of punitive damages as they pertain to Plaintiff Thomas Sabo's claims against Defendant Suarez.

*B. Defendant BTI*

Plaintiffs argue they should be entitled to discovery with respect to Thomas Sabo's claim for punitive damages against Defendant BTI because they allege that Defendant BTI was negligent in its "hiring, training and supervision procedures and their reckless entrustment of the tractor-trailer to Defendant Suarez." (Doc. 34, p. 4). They allege that Defendant Suarez was a substandard candidate for hire as a tractor-trailer operator for Defendant BTI since they claim that Defendant Suarez had a previous speeding ticket in New Mexico, a suspension and/or revocation of his license, multiple moving violations, falsified/missing driver logs, little to no experience in the field, and the inability to speak/read/write English fluently. (*Id.*).

Plaintiffs contend that these facts about Defendant Suarez were readily available to Defendant BTI, since Suarez listed his license suspension on his Driver Application. (Doc. 34 p. 4). They also contend that any experience that Defendant Suarez had was driving a van, not a tractor-trailer. (Doc. 34, pp. 4-5). Also, while Suarez's Driver Application stated that he had "no traffic convictions within the previous three years," Plaintiffs claim Defendant Suarez actually had a speeding ticket in New Mexico on April 9, 2004.[5] (Doc. 34, p. 5). According to the Plaintiffs, Defendant Suarez also pled guilty to a traffic citation he was issued for "operating a vehicle in violation of equipment standards." (*Id.*). They also claim Defendant Suarez's driver logs from October 7, 2006 through October 28, 2006 were never produced, and that the logs which were produced "show falsified information with regard to times and/or distances." (*Id.*).

Defendants claim that they were diligent in their hiring practices and that they received a "three year Motor Vehicle Report on Mr. Suarez and already discussed with Mr. Suarez the fact that his license had been previously suspended for unpaid tickets." (Doc. 36, p. 11). Defendants state that they also contacted Defendant Suarez's prior employer and were satisfied about both the licence suspension and the speeding ticket from New Mexico in 2004, which had not been identified by Defendant Suarez on his application. (*Id.*). According to Defendants, the license suspension was the result of unpaid parking tickets which appear to have resulted from "not having liability insurance in place on his personal vehicle." (Doc. 34, p. 5). Defendants explain that the violations that Defendant Suarez received were comprised of "a

---

[5]In Defendants' Opposition Brief, they state that Defendant Suarez's 2004 New Mexico speeding ticket was issued approximately 18 months prior to his hiring by Defendant BTI in January 2006.

-7-

14-hour rule violation, failing to have his medical certificate with him, having over weight tandem axles and unspecified 'operating without equipment' violation[s]." (*Id.*). As mentioned earlier, Defendants state that Defendant Suarez's experience is supported by the fact that he received his CDL in 1994 and had 10-12 years of prior driving experience. As to Plaintiffs' argument that Defendant Suarez has substandard English abilities, Defendants claim Plaintiffs are now aware that Defendant Suarez was born in California and raised in Texas, and he speaks English "very fluently." (Doc. 36, pp. 4-5).

As pertains to the driving log discrepancy, Defendants admit the logs two weeks prior to the accident cannot be located (October 7, 2009-October 28, 2009). (Doc. 34, p. 5). Defendants assert that Suarez believes he turned the missing logs in, and that the office is currently attempting to locate these logs. Defendants acknowledge that the missing logs can be seen as a negative inference. (Doc. 34, p. 6). Defendants do not address the Plaintiffs' claims that the logs that are available contain multiple discrepancies. Plaintiffs, however, contend that without the missing logs or "blackbox" data, and based on Defendant Suarez's history of misrepresentations in his available logs, there is nothing to prevent Defendants from arguing that Suarez was over-tired from driving past the allowable number of hours, and that he was exceeding the speed limit. (Doc. 37, p. 8).

Plaintiffs again argue in their Supplemental Brief that Defendant Suarez had allegedly lied on his Driver Application, a fact which they state was known by Defendant BTI. (Doc. 37, p. 6). According to Plaintiffs, Defendant BTI would have uncovered Defendant Suarez's misrepresentation about his convictions upon receipt of his three-year Motor Vehicle Report,

-8-

which detailed Suarez's 2004 New Mexico speeding citation, along with other violations. (*Id.* and Ex. K). Plaintiffs also contend that after his employment commenced with Defendant BTI, Defendant Suarez was issued several citations, including numerous Federal Motor Carrier Violations in Kansas (including at least two 14 Hour Rule violations) and a speeding citation in Tennessee on May 20, 2006. Plaintiffs cite to their Exhibit L attached to their Doc. 37 Brief for support.

The Court finds there is enough evidence to allow discovery regarding Thomas Sabo's punitive damages claims against Defendant BTI. It appears at this point that enough information exists that Defendant BTI may have been aware that Defendant Suarez was not suitable to operate a tractor-trailer. This Court has previously allowed claims of punitive damages to proceed against Defendant trucking companies who have been aware of misrepresentations in driver's logs and failed to address the misrepresentations. *Burke v. TransAm Trucking Inc.*, 605 F.SUpp.2d 647, 656 (M.D.Pa. 2009). Defendants have not spoken to Plaintiffs' claim that Defendant Suarez made misrepresentations in several of the available driver's logs. This Court has also allowed punitive damages to proceed against Defendant trucking companies who allowed a driver to operate a tractor-trailer despite their awareness of a driving record filled with "speeding, driving over hours and log falsification," which is apparently what is alleged here. *Id.*

In addition, the Court notes that in Pennsylvania, Defendant BTI can also have punitive damages awarded against it for the actions of Defendant Suarez based on vicarious liability. *Shiner v. Moriarty*, 706 A.2d 1228, 1240 (Pa.Super.1998).

Accordingly, the Court will grant Plaintiffs' Motion for Leave of Court to Permit Punitive

Damages Discovery against both Defendants.[6]

An appropriate Order follows.

                                                                          **THOMAS M. BLEWITT**
                                                                          **United States Magistrate Judge**

Dated: July 31, 2009

---

[6] The Court will also include in its Order a further extension of the August 1, 2009 discovery deadline to allow punitive damages discovery, as well as an extension of all other current case management deadlines.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS SABO and CHRISTINE SABO, His Wife, | : | CIVIL ACTION NO. **3:CV-08-1889** |
| | : | Magistrate Judge Blewitt |
| Plaintiffs | : | |
| v. | : | |
| ARIEL SUAREZ, et al., | : | |
| Defendants | : | |

## ORDER

AND NOW, this 31st day of **July, 2009**, based on the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Motion for Leave of Court to Permit Punitive Damages Discovery **(Doc. 33)** is **GRANTED.**

2. The discovery deadline is extended to **October 1, 2009.**

3. All other case management deadlines are extended for a period of sixty (60) days, as follows:

   **a. Expert Reports.** Reports of Plaintiffs' retained experts shall be produced by November 1, 2009. Reports of Defendants' retained experts shall be produced by December 1, 2009. Supplementations shall be due January 1, 2010.

   **b. Joinder of parties.** Any joinder of parties shall be accomplished by **November 1, 2009.**

   **c. Amendments.** Amendments to the pleadings shall be filed by **November 1,**

2009. Said amendment shall be accompanied by either motion or written consent by adverse party, as required by Rule 15(a), Fed.R.Civ.P.

    **d. Dispositive Motions.** All case dispositive motions shall be filed by December 1, 2009.

                   _____
                   **THOMAS M. BLEWITT**
                   **United States Magistrate Judge**

Dated: July 31, 2009